UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ASBERT FITZGERALD JOSEPH | : | CIVIL ACTION NO. 2:11-cv-1752 |
| VERSUS | : | JUDGE MINALDI |
| R. CHILDRESS, ET AL | : | MAGISTRATE JUDGE KAY |

### REPORT AND RECOMMENDATION

Before the court is the Motion for Summary Judgment and Motion to Dismiss by the defendants: Lieutenant Reshay Childress ("Childress"); Warden J.P. Young; Assistant Wardens Marne Boyle ("Boyle") and Kymberly Ask-Carlson; Captains Gregory Kizziah ("Kizziah") and Benjamin Valle ("Valle"); Special Investigative Service Technician Kent Byrd ("Byrd"); Special Investigative Agent Jerry Cramer; Unit Managers Johnny Willis and Mark Gutierrez; SHU Lieutenants David Chapman ("Chapman") and Joshua Robinson ("Robinson"); and SHU Officer in Charge Ron Lair ("Lair") (collectively, "Defendants").  [Doc. 25, att. 1, p. 1].

For the reasons discussed herein, IT IS RECOMMENDED that Defendant's motion be GRANTED. .

### I. BACKGROUND

Plaintiff Asbert Fitzgerald Joseph ("Joseph") filed the instant civil rights complaint on September 28, 2011, complaining of events that occurred while he was detained at the Federal Detention Center in Oakdale, Louisiana ("FDCO").  He has since been released from custody, and currently resides in Brooklyn, New York.  [Doc. 17]  Defendants are employees of the Federal Bureau of Prisons ("BOP") at FDCO sued in their individual capacity under *Bivens v. Six Unknown Named Agents of Fed Bureau of Narcotics*, 403 U.S. 388 (1971).

-1-

Joseph was confined to the Special Housing Unit (the "SHU")[1] at FDCO for seven months. He claims that he was so confined as retaliation for his many challenges via the administrative-grievance process to FDCO's policy regarding the appointment of detainee representatives. Joseph also alleges that, during his entire SHU confinement, he was not given even one mandatory hearing to identify and/or justify the reasons for his confinement. He further maintains that he was discriminated against as an immigrant detainee. Joseph also states that while in SHU he lost weight, had trouble sleeping, had to purchase reading glasses, and had increased blood pressure which went untreated.

As a result of his confinement in the SHU, Joseph claims that his rights guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments were violated. He seeks compensatory and punitive damages, as well as injunctive relief.

## II. LEGAL STANDARDS

**A. Motion to Dismiss**

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp. 2d 383, 388 (E.D. La. 2006).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has

---

[1] Special Housing Units are housing units in federal institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates. Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population. See 28 CFR 541.21.

facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id*. Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 664, 129 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

In *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009), the Fifth Circuit held that neither *Twombly* nor *Ashcroft* created a heightened pleading standard for complaints, and that these cases instead only "explicate" Rule 8(a)(2), particularly because *Twombly* recognized that pleading requirements could only be changed through amendment of the Federal Rules. *Id.* at 258–59 (citing *Twombly*, 550 U.S. at 569 n. 14).

Accordingly, Rule 8(a)(2) continues to only require a "'short and plan statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). This standard is met by the "reasonable inference" the court must make, with or without discovery, that the facts set forth a plausible claim for relief under a particular theory of law, provided there is a

"reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556.

Although a court's review is generally limited to the pleadings in deciding a motion to dismiss, the court may also consider documents attached to the complaint and the motion to dismiss, provided such documents are central to the plaintiff's claim and are referred to in the complaint. *Lone StarFund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

**B. Summary Judgment**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment

is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party . . . ." *Id.*

**C. Statement of Uncontested Facts**

Local Rule 56.2 of the United States District Court of the Western District of Louisiana provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Therefore, in the instant case, because Joseph did not controvert the defendant's Motion for Summary Judgment, the statement of uncontested facts presented by the defendants should be admitted as true. [*See* doc. 25, att. 1, pp. 1–8].

### III. DISCUSSION

**A. Injunctive Relief**

Joseph's complaint seeks an injunction against all acts of discrimination against him. [Doc. 1, p. 2]. However, Joseph has been released from BOP custody since this filing of his complaint, and currently resides in Brooklyn, New York. [Doc. 17]. Because he is no longer housed at FDCO, and there is currently no possibility of returning there, his requests for injunctive relief regarding FDCO policies are moot. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

**B. Claims for Damages**

Joseph asks for compensatory and punitive damages for numerous alleged constitutional violations. The Court is essentially presented with the following Constitutional issues:

(1) Whether Joseph's placement in the SHU was a due-process violation;

(2) Whether denying review of Joseph's SHU detention was a due-process violation;

(3) Whether FDCO's laundry policy favoring American prisoners over foreign detainees was an equal-protection violation;

    (4)    Whether Joseph's detainment in the SHU implicates the Fourth Amendment;

    (5)    Whether Joseph was retaliated against for exercising his First Amendment rights;

    (6)    Whether Joseph stated a First Amendment denial of access to the courts claim; and

    (7)    Whether Joseph stated an Eighth Amendment claim for deficient medical care while detained in the SHU.

The court will examine each question in turn according to the applicable standards of law.

### 1. First Due-Process Claim – SHU Detention

Joseph alleges that defendants Childress, Boyle, Byrd, Kizziah, and Valle colluded to confine him in the SHU, and that his detention therein violated his due process rights under the Fifth Amendment. Joseph alleges that "[his] confinement was neither commensurate with federal law, justified by prison procedures or circumstances, [nor] required or authorized by federal law." [Doc. 1, p. 25]. The defendants respond that Joseph has no liberty interest in avoiding placement in SHU, and thus has no due process claim. [*See* doc. 25, att. 4, p. 8].

In *Sandin v. Conner*, the Supreme Court held that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995) (citations omitted). In other words, the Fifth Amendment does not grant a prisoner a broad liberty interest implicated by ordinary decisions regarding his incarceration—to the contrary, a prisoner must show that he suffered a significant and atypical hardship or that his sentence was unduly extended. *See id.*

In the context of prisoner and detainee segregation, the law in the Fifth Circuit is clear: When an inmate or detainee is administratively segregated from the general prison population,

no constitutionally protected liberty interest is implicated. *See Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996) ("[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim . . . ."); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam) ("[A]dministrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest."); *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995) (per curiam) ("[I]t is difficult to see that . . . deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status."); *see also Smith v. Skinner*, No. 97-40553, 1997 WL 811819 at *1 (per curiam) (5th Cir. 1997) (citing *Mitchell v. Sherriff Dept., Lubbock Cnty., Tx.*, 995 F.2d 60, 62–63) (finding that the lack of a liberty interest in administrative segregation applies to detainees as well as inmates).

Considering the weight of Fifth Circuit authority establishing the non-existence of due-process implications when a prisoner is administratively segregated, the undersigned concludes that Joseph's due-process claim is without merit. The record clearly shows that Joseph's detention was not prolonged by his detention in the SHU. [Doc. 25, att. 1, p. 2 at ¶ 5]. Furthermore, the record establishes that Joseph was placed in the SHU because of threats against his life made by other inmates. [Doc. 25, att. 1, pp. 6–7]. The fact the FDCO officers segregated Joseph to protect his safety can hardly be called an "atypical and significant hardship" which would implicate due-process. *Sandin*, 515 U.S. at 484. Accordingly, Joseph's complaint fails to state a claim upon which relief may be granted, and his claim should be dismissed pursuant to Rule 12(b)(6).

**2. Second Due-Process Claim – Denying Review of Joseph's SHU Placement**

Joseph alleges that he was denied due process because he did not receive hearings to justify his placement in the SHU as required by BOP Program Statement 5270.10 Section 7. Joseph alleges that "[r]espondents deliberately withheld mandatory hearings in violation of clear federal law, because these hearings would have revealed Respondents' unlawful and capricious justifications for confining Petitioner." [Doc. 1, p. 26]. Defendants argue that, even though the hearings are required by policy, withholding the hearings does not violate due process and thus Joseph fails to state a claim for which relief can be granted. [*See* doc. 25, att. 4, p. 11].

Joseph filed this suit as a *Bivens* action.[2] For Joseph to have stated a valid *Bivens* claim, the act or omission he alleges must rise to the level of a constitutional violation. *See Seigert v. Gilley*, 500 U.S. 226 (1991).

In *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) the Supreme Court held that prison regulations "place no substantive limitations on official discretion and thus create no liberty interest entitled to protection under the Due Process Clause." Likewise, the Fifth Circuit has found that a prison official's failure to follow the prison's own policies, procedures, or regulations does not rise to a level of constitutional violation "if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (citations omitted); *see also Brown v. Feltus*, 128 F. App'x 345, 346 (5th Cir. 2005).

As discussed *supra* in part III.A Joseph had no constitutionally protected liberty interest in avoiding assignment to the SHU. Thus the defendants' failure to review Joseph's SHU

---

[2] In *Bivens*, the Court held that the Constitution provides an implied cause of action such that an individual may seek relief against any person who, under the color of federal law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In order to hold a defendant liable under *Bivens*, the plaintiff must allege facts to show: (1) a constitutional right has been violated; and (2) that the conduct complained of was committed by a person acting under color of federal law—that is, that the defendant was a federal actor. *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

Detention according to their internal policies did not give rise to a constitutional violation, because there was no underlying constitutional interest to violate.

For these reasons Joseph's complaint fails to state a cognizable claim for relief for denial of the SHU hearing claim and Defendants' motion to dismiss this claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted.

### 3. Equal-Protection Claim – Preferential Treatment of American Detainees

Joseph claims he was discriminated against while detained in the SHU by Chapman, Kizziah, Lair, Robinson, and Valle. Specifically, Joseph claims that as an immigration detainee he received worse treatment than the American prisoners housed in the SHU. [Doc. 1,pp. 21–23].

Joseph claims that he was not given a laundry bag because he was a detainee and only American prisoners are given laundry bags. *Id.* Additionally, Joseph claims that detainees are forced to have poorer hygiene than the American prisoners because detainees are only issued one set of clothes exchanged three times per week as opposed to American prisoners who receive three sets of clothes and may place them in the laundry bag as needed. *Id*. Finally, Joseph alleges that immigrant detainees are denied access to the recreation yard and law library in favor of American prisoners. *Id.*

Defendants argue that, contrary to Joseph's assertions, all detainees in the SHU were treated equally with no preference given to detainees based on race ethnicity, or national origin. [Doc. 25, att. 4, pp. 13–15]. In their respective declarations, Defendants assert that they did not discriminate against Joseph in any way. [*See* doc. 25, atts. 6–8, 10–11]. Furthermore, Defendants' affidavits establish that the reason laundry bags are given to inmates and not detainees is that the laundry bags make it more difficult for inmates (who are usually housed in

the SHU much longer than detainees) to pass contraband through laundry.  [Doc. 25, atts. 6–8, 10–11].

For Joseph to have a valid equal-protection claim under the Fifth Amendment, Joseph "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001) (per curiam).  Discriminatory intent "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group . . . ."  *Lavernia v. Lynaugh*, 845 F.3d 493, 496 (5th Cir. 1988) (emphasis in original) (internal quotation marks, citations, and footnote omitted).  A claimant alleging an equal-protection violation has the burden of showing purposeful discrimination on the part of a specific defendant in his case.  *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)).

The defendants argue that since Joseph's complaint is "barren as to any allegations evidencing discriminatory intent by any defendant," this Court should dismiss Joseph's equal-protection claim under Rule 12(b)(6).  [Doc. 25, att. 4, p. 14].  The undersigned agrees.  Although Joseph alleges the impact of the laundry policy, he does not state how any defendant acted with the intent to harm a particular group in implementing the policy.  The lack of any such allegation is fatal.  *See Oliver v. Kanan*, 428 F. App'x 481, 482 (5th Cir. 2011) (per curiam) (citing *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990)).

Accordingly plaintiff's complaint fails to state a claim for which relief may be granted, and should be dismissed pursuant to Rule 12(b)(6).

### 4. Fourth-Amendment Claim – SHU Detainment

Joseph claims that Defendants "violated [his] right to be free from cruel and unreasonable detention and seizure under the 4th [sic] Amendment to the U.S. Constitution." [Doc. 1, p. 34]. It is difficult to discern which facts Joseph believes implicate the Fourth Amendment, as he does not allege any search or seizure, let alone an unreasonable one. [Doc. 25, att. 4, p. 15]. The undersigned agrees that Joseph's Fourth Amendment claim presumably refers to his detainment in the SHU itself, and that his claim is more properly analyzed under the Fifth Amendment as a due-process issue. *Id.* A new analysis is unnecessary as we have already recommended that Joseph's Fifth-Amendment claims be dismissed *supra* in parts III.A–B.

Additionally and even in the event Joseph had alleged a search or seizure, his claim still would not have survived summary judgment. The law is clear that the Fourth Amendment proscription against unreasonable searches and seizures is greatly lessened in the prison context. *Hudson v. Palmer*, 468 U.S. 525–26 (1984); *see also Elliott v. Lynn*, 38 F.3d 188, 190–191 (5th Cir. 1994) (holding that the standard for a reasonable search in the prison context is an easy one to meet). Nothing in the record indicates that FDCO officials acted outside the bounds of routine BOP policy in their dealings with Joseph.

### 5. Retaliation Claim

Joseph claims that he his placement in the SHU was in retaliation for his filing of administrative grievances over the prison "rep" system. [Doc. 1, pp. 6, 25–28]. He asserts that the defendants violated his First Amendment right to free speech by the alleged retaliation.

Officials may not retaliate against an inmate "for complaining through proper channels . . . ." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). In order to state a cognizable claim for retaliation, an inmate must demonstrate: (1) the inmate's exercise of a

specific constitutional right;<sup>3</sup> (2) the defendant's intent to retaliate against the prisoner for exercising that right; (3) a retaliatory adverse act; and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

An inmate's personal belief by an inmate that he is the victim of retaliation is insufficient. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Rather, the inmate must present direct evidence of a motivation or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Moreover, in order to establish causation, the inmate must demonstrate that but for the retaliatory motive, the incident complained of would not have occurred. *Id.*

The undersigned agrees that, under the above standard, Joseph's claim fails to state a claim. Notwithstanding that Joseph correctly sets forth the standard for retaliation claims, his complaint states merely a personal belief that he was a victim of retaliation. [*See* Doc. 1, pp. 25, 29–31]. There is no direct or circumstantial evidence of retaliatory motive on the part of any defendant, nor is there alleged a chronology of events from which retaliation may plausibly be inferred. *See Woods*, 60 F.3d at 1166. Thus, Joseph's claim fails to satisfy the pleading standards set forth in this Circuit, and should be therefore dismissed under Rule 12(b)(6).

Furthermore and even in the event retaliation could plausibly be inferred, defendants have provided adequate evidence to establish that Joseph's placement in the SHU was not retaliatory. Joseph's submitted his complaints regarding the "rep system" to the Regional and Central BOP offices, not at FDCO. [Doc. 25, att. 1, p. 1; Doc. 25, att. 9, p. 3]. Accordingly, there is nothing to suggest that defendants ever knew of Joseph's complaints. Furthermore, the complaints were received *after* Joseph was placed in the SHU. [Doc. 25, att. 9, p.3]. Therefore,

---

<sup>3</sup> The Court pretermits the determination of whether *Bivens* extends to First Amendment claims. *See Reichle v. Howards*, 132 S. Ct. 2088, 2094 n. 4 (2012) (noting that it has never been held that *Bivens* extends to First Amendment claims).

defendants could not have retaliated against Joseph for something that had not yet occurred. Finally, the record clearly establishes that the reason Joseph was placed in the SHU was because he posed a threat to the orderly running of the institution, not as retaliation for his complaints. [Doc. 25, att. 5, pp. 2–3]. As Joseph has not responded to the instant motion, the evidence put forth by the defendants establishes that Joseph's placement in the SHU was not retaliatory.

### 6. Access-to-the-Courts Claim

Joseph essentially argues in his complaint that he was denied access to the courts in violation of the First Amendment. He first alleges that he was "unable to meaningfully communicate with the attorney representing him in removal proceedings," and that as a result his immigration appeal was dismissed. [Doc. 1, pp. 10–11]. Joseph concedes that "the majority of the responsibility for depriving [him] of his right to pursue an appeal rests with [his] former attorney . . ." but asserts that the defendants "must also bear some of the burden." [Doc. 1, p. 11]. Joseph further asserts that while he was in the SHU, he was not provided adequate access to the law library, and consequently he missed deadlines and received unfavorable rulings in his immigration appeal. [Doc. 1, pp. 15–17].

Prisoners clearly have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, prisoners do not have a right to a law library *per se*; rather, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for assuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks and citation omitted). Furthermore, a prisoner must "demonstrate an actual injury stemming from defendants' unconstitutional conduct." *Lewis v. Casey*, 518 U.S. 343, 351–54 (1996) (citing *Bounds v. Smith*, 430 U.S. 817 (1977); *see also Ruiz v. United States*,

160 F.3d 273, 275 (5th Cir. 1998).  To establish an "actual injury," the prisoner must show that the denial of access "hindered his efforts to pursue a legal claim."  *Lewis*, 518 U.S. at 351; *see also Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991) (holding that a civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992) (holding that if a litigant's position is not prejudiced by the claimed violation, his claim of denial of access to the courts is not cognizable).

The undersigned finds that Joseph has not alleged that the actions of any defendant hindered his efforts to pursue a legal claim.  Joseph claims that he was unable to communicate with his attorney but does not specify any action by any defendant which frustrated his efforts to do so. [Doc. 1, p. 11].  Being in the SHU alone does not hinder communication as inmates in the SHU are nevertheless allowed to communicate with their legal representatives. *See* 28 C.F.R. § 541.31(l) (2012) (allowing SHU inmates an opportunity to perform personal legal activities in accordance with federal regulations). The Code of Federal Regulations allows inmates in the SHU the opportunity to correspond and visit with their attorney if they have retained one. 28 C.F.R. §§ 543.12–.14 (2012).  Furthermore, even though Joseph missed a deadline that caused his immigration appeal to be dismissed, *see* In re *Asbert Joseph*, 2010 WL 1284434 (BIA 2010); In re *Asbert Joseph*, 2011 WL 4730895 (BIA 2011), Joseph has not alleged how any of the defendants caused him to miss the deadline.

Finally regarding the law-library-access claim, the fact that Joseph was represented by counsel renders the question of law library access irrelevant.  By Joseph's own admission the fault for missing the deadline lies with his former attorney. [Doc. 1, p. 11].  Because Joseph was represented, his attorney—not the law library—was his primary "means for assuring a

reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Lewis*, 518 U.S. at 351 (internal quotation marks and citation omitted).

As Joseph has not alleged how any of the defendants interfered with his communications with his attorney or hindered his immigration appeal, the undersigned finds that his placement in the SHU alone is not an adequate basis on which to plead denial of access to the courts. Accordingly, this claim should be dismissed pursuant to Rule 12(b)(6).

### 7. Deficient-Medical-Care Claim

Joseph alleges that while he was in the SHU he lost weight, had trouble sleeping, was forced to purchase reading glasses, and experienced increased blood pressure. [Doc. 1, p. 31]. He further alleges that he is hypertensive and as such he is supposed to be given a physical every three months and examined by a physician every six months. *Id.* Joseph alleges that the above ailments went untreated, and that his blood pressure was never checked when he was in the SHU. *Id.* Finally he alleges that despite repeated complaints of pain in his knee, it took him six months to have an x-ray performed, and when he finally did get an x-ray, he was informed that his knee had deteriorated. *Id.* at 33.

In order to state a colorable claim for the denial of medical care under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference" under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). Deliberate indifference is found only

when the facts demonstrate wanton action on the part of prison officials that can be characterized as "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06.

To meet the deliberate indifference standard, Joseph must allege that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that demonstrated wanton disregard for a serious medical need. *Domino*, 239 F.3d at 755 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Negligent or erroneous medical treatment or judgment does not provide a sufficient basis for a 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993).

The appropriate test balances the needs of the prisoner against the needs of the penal institution, and thus the critical focus looks to medical necessity, not desirability. *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981). A plaintiff's disagreement with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See e.g. Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992). An allegation that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992). Continuing pain is unpleasant, but it does not automatically demonstrate the occurrence of a constitutional violation. *Id.*

Defendants argue that because Joseph did not name any defendant in connection with his deficient medical care claim, he did not state a claim for which relief can be granted. We agree. Although Joseph alleges that he spoke to "Mashimo," "Saunier," and "Nurse Practioner Starr" about his medical needs, none of these individuals are defendants in this litigation. [Doc. 1,

p.33]. Joseph has not claimed that any of the **named defendants** were deliberately indifferent to his medical needs, as required by the pleading standards of this Circuit. To state a colorable claim for relief, Joseph must allege that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that demonstrated wanton disregard for a serious medical need. *Domino*, 239 F.3d at 755 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). He failed to do so, and accordingly his claim should be dismissed pursuant to Rule 12(b)(6).

Even in the event plaintiff had made these allegations against a named defendant, the claim still would not have survived summary judgment. The record contains voluminous documentation of Joseph's treatment while housed in the SHU. [Doc. 25, att. 12]. It is evident that Joseph received ample and adequate care for all his complaints. Thus, any disagreement Joseph had with the timing or course of treatment does not establish deliberate indifference. *See Graves*, 1 F.3d at 319; *Mayweather*, 958 F.2d. at 91. Accordingly, defendants are entitled to summary judgment on this point.

### IV. CONCLUSION

Considering the foregoing, IT IS RECOMMENDED that the defendant's motion be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon

grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 23rd day of September, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE